1:18-mj-06062-JEH    # 1    Page 1 of 11                                    E-FILED
AO 106 (Rev. 01/09) Application for a Search Warrant                                  Monday, 25 June, 2018 04:12:17 PM
                                                                                      Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
for the
Central District of Illinois

**FILED**
JUN 2 5 2018
CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

In the Matter of the Search of            )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 18-6062
THE COMMERCIAL PROPERTY LOCATED AT 907 W. )
JOHNSON STREET, PEORIA, IL 61605, KNOWN AS )
MACARTHUR CORNER STORE FOOD & MORE, INC. )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ___Central___ District of ___Illinois___ *(identify the person or describe property to be searched and give its location):* See Attachment.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* See Attachment B and Addendum to Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___18___ U.S.C. § ___1341___, and the application is based on these facts:
This search also relates to violations of 26 U.S.C. §§ 7201 & 7206(1).  Please see attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested
   under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

                                                          s/Brian Eastman
                                                          _____
                                                          *Applicant's signature*

                                                          Brian Eastman, Postal Inspector, USPIS
                                                          *Printed name and title*

Sworn to before me and signed in my presence.

                                                          s/Jonathan E. Hawley
                                                          _____
                                                          *Judge's signature*

Date: 06/25/2018

City and state: Peoria, Illinois                         Jonathan E. Hawley, United States Magistrate Judge
                                                          *Printed name and title*

# AFFIDAVIT

## I.

## INTRODUCTION

I, Brian S. Eastman, Postal Inspector, United States Postal Inspection Service, being duly sworn under oath states as follows:

1. I am a United States Postal Inspector of the United States Postal Inspection Service and have been so employed since August 2001. I am currently assigned to the Springfield, IL domicile of the United States Postal Inspection Service. I have completed numerous training sessions on identity theft, mail fraud, and other related topics. My duties include the investigation of complaints received from the public concerning alleged mail theft, identity theft, credit card fraud, and other fraudulent misrepresentations for the purpose of receiving money or property through the mail or interstate commerce. I have conducted investigations of individuals suspected of mailing and submitting false documents. I have been the affiant and I have participated in the execution of numerous search warrants which have resulted in the seizure of contraband, personal tangible property, credit cards, and other records.

2. The information contained in this affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement agents including those from the Internal Revenue Service-Criminal Investigation Division and Illinois Department of Revenue Criminal Investigation Division, and the review of documents and records.

## II.

## PURPOSE OF AFFIDAVIT

3. I make this affidavit in support of an application for a warrant to search MacArthur Corner Store Food & More, Inc. (MacArthur Corner Store), 907 W. Johnson Street, Peoria, IL 61605 as there is probable cause to believe that evidence of, fruits of, as well as property designed for use, intended for use, or used in committing violation of 18 U.S.C. §1341 (Mail Fraud), 26 U.S.C. § 7201 (Attempt to Evade or Defeat the Assessment of Tax), 26 U.S.C. § 7206(1) (Filing of a False Tax Return) can be found at the location. Attachment A contains a more particular description, including a photograph of the premises to be searched.

4. Since this affidavit is being submitted for the limited purpose of securing authorization to search the above listed locations, your affiant has not included each and every fact known concerning this investigation. Your affiant has set forth only the facts that your affiant believes are essential to establish the necessary foundation for the issuance of the search warrant.

## III.

## PROPERTY TO BE SEIZED

5. A list of specific items to be seized from the premises described in paragraph 3, above, is attached hereto as Attachment B, and Addendum to Attachment B is incorporated herein by reference.

6. Based on my training and my experience, as detailed above, I believe that there is probable cause to believe that the items listed above in Attachment B and Addendum to Attachment B will be found at the premises described in, above, paragraph 3.

## IV.

### SUMMARY OF PROBABLE CAUSE

7. Alaa Iwaisi is the owner of MacArthur Corner Store. The business activity listed on an Illinois Business Registration Application filed with the Illinois Department of Revenue (IDOR) is Grocery. The address of MacArthur Corner Store is 907 W. Johnson Street, Peoria, IL 61605.

8. According to records maintained by the Illinois Secretary of State, MacArthur Corner Store was incorporated on September 30, 2013. The business is active and has an address of 907 W. Johnson Street, Peoria, IL 61605. Lanna Iwaisi is listed as the President.

9. Lanna Iwaisi was married to Alaa Iwaisi from December 28, 2011 to July 31, 2015.

10. IRS records show that MacArthur Corner Store established an account with the Internal Revenue Service in September 2013. It was issued Employer Identification Number (EIN) 46-376390. The address on file is 907 W. Johnson Street, Peoria, IL 61605. A Form 1120S, U.S. Income Tax Return for an S Corporation was filed for MacArthur Corner Store for the tax years 2015, 2016, and 2017. Lanna Iwaisi is listed as the sole shareholder for the business on the 2015 Form 1120S. Lanna and Alaa Iwaisi are listed as the shareholders with a 60-40 split respectively on the 2016 Form 1120S. Alaa Iwaisi is listed as the sole shareholder on the 2017 Form 1120S.

11. Forms IL-1120-ST, Small Business Corporation Replacement Tax Return were filed for MacArthur Corner Store with IDOR for the tax years 2015, 2016, and 2017. The shareholder information reported on these returns matches that reported on the federal Forms 1120S. These forms were mailed to IDOR via the United States Postal Service each year.

12. ST-1's, Sales and Use Tax and E911 Surcharge Returns were filed each month with IDOR for MacArthur Corner Store over the period January 2015 to May 2018.

13. The total receipts reported to IDOR each year via the ST-1's reconcile to the gross receipts reported on the yearly federal Forms 1120S. The Ordinary Income or Loss reported on the federal Forms 1120S each year reconciles to the Ordinary Income or Loss reported on the Forms IL-1120-ST each year. In all, the figures reported on the Illinois state returns reconcile to those reported on the federal returns.

14. On June 4, 2018, Alaa Iwaisi was involved in a car accident where it was discovered that he possessed $42,100 in cash. He claimed he was using the funds to purchase two vehicles. Iwaisi reported only $35,500 in wages from MacArthur Corner Store in 2017.

15. On June 5, 2018, Peoria Police Department executed a search warrant on the residence of Alaa Iwaisi located at 1420 W. Daytona Drive, Peoria, IL 61614. During the search, a Peoria PD Officer observed a grocery bag full of financial records sitting in the kitchen area of the home. He recalled seeing money order receipts, bank receipts, and receipts related to MacArthur Corner Store.

16. On June 11, 2018, IDOR-Criminal Investigation Division (CID) agents conducted a tobacco inspection at MacArthur Corner Store. While conducting their inspection, the agents observed two notebooks that appeared to track the daily sales and expenses of the store over the time period July 2017 to May 2018. An employee of the store allowed the agents to take pictures of the notebooks' contents.

17. The total sales for each month as outlined in the notebooks were compared to the corresponding reported ST-1 monthly sales, and it was determined that the sales were being underreported by approximately $15,000-$20,000 each month.

18. On June 15, 2018, IDOR-CID had a follow-up meeting at the MacArthur Corner Store, and Alaa Iwaisi was present for that meeting. The following is a summary of some of the statements Iwaisi made during this meeting:
    a) Iwaisi and his now ex-wife Lanna Iwaisi originally purchased the MacArthur Corner Store in December 2012. After the two divorced, Iwaisi took over full ownership of the business.
    b) Iwaisi confirmed that he uses notebooks to record his daily sales and expenses.
    c) Iwaisi claimed that he keeps all of the cash register tapes and expense receipts for MacArthur Corner Store and turns them over to his return preparer each month. He further stated that his return preparer returns these records to him after she is finished preparing the ST-1, and he stores them at his personal residence located at 1420 W. Dayton Dr., Peoria, IL 61614.
    d) Iwaisi stated his only source of income is from MacArthur Corner Store.

19. During the June 15th meeting at MacArthur Corner Store, IDOR-CID agents observed that the two notebooks they saw on their previous visit were still located in the store along with one additional notebook.

20. According to guidelines published on irs.gov, small business owners should keep records that support an item of income, deduction or credit shown on the tax return for a period of three years from the date the return is filed.

21. According to Currency Transaction Reports filed by the Par-A-Dice Gaming Corp., over the course of 2016, Alaa Iwaisi used cash to purchase $47,105 in casino chips and redeemed $38,100 in cash via casino chips. Iwaisi claimed only $24,000 in wages on his 2016 Form 1040. Similarly in 2017, Iwaisi used cash to purchase $147,875 in casino chips and redeemed $146,250 in cash via casino chips. Iwaisi reported only $35,500 in wages on his 2017 Form 1040.

22. On June 21, 2018, a search warrant was executed at MacArthur Corner Store. IDOR-CID agents observed the following:
    - One Point of Sale (POS) cash register located on the front counter of the store. In discussions with a store employee, it was determined that a yearly sales report could be generated from the POS machine.
    - Two laptop computers. One was located in the front area of the store behind the counter and the second was located in the office area. A store employee identified the laptop computer found behind the counter as belonging to the store. The same employee claimed not to know who owned the second laptop computer found in the office.
    - One tower computer was observed sitting in a back room on a shelf.

23. Based upon my work experience and training, as well as discussed with law enforcement agents assisting in this investigation, I know that: in the current age, most records are typically kept on computers, discs, thumb drives, detachable drives, and other electronic devices that store data which are often maintained at residences and businesses.

24. Based on my knowledge, training, experience, and information relayed to me by agents and others involved in forensic examination of computers, I know that:

    a. Computer hardware consists of all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, digital, magnetic, optical or similar computer impulses or data. Hardware includes any data-processing devices (such as central processing units and self-contained "laptop" or "notebook" computers or Personal Digital Assistants -- PDAs); tablets; smart phones; internal and peripheral storage devices (such as fixed disks, floppy disks, external hard disks, floppy disk drives and diskettes, tape drives and optical storage devices, thumb drives, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); and related communications devices (such as modems, cables and connections, recording equipment, speed dialers, programmable telephone dialing or signaling devices, and electronic tone-generating devices); as well as any devices, mechanisms, or parts, that can be used to restrict access to computer hardware (such as physical lock and keys).

    b. Computer software is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications, utilities, compilers, interpreters, and communications programs.

    c. Computer-related documentation consists of written, recorded, printed, or electronically-stored material which explains or illustrates how to configure or use computer hardware, software, or other related items.

    d. Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or programming codes. A password (which is a string of alpha-numeric characters) usually operates as a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

    e. Computer hardware and computer software may be utilized to store information or data in the form of electronic, digital or magnetic coding on computer media or on media capable of being read by a computer or computer related equipment. This media includes, but is not limited to fixed hard drives and removable hard drive cartridges, laser disks, tapes, floppy disks, CD-ROMs, thumbdrives and any other media capable of storing magnetic coding.

25. Based on my knowledge, training, experience, and information relayed to me by agents and others involved in forensic examination of computers, I know that searching and seizing information from computers often requires agents to seize most or all electronic-storage devices, along with related peripherals, to be searched later by a qualified expert in a laboratory or other controlled environment for the following reasons:

    a. The volume of evidence. Computer storage devices (like hard disks, diskettes, thumbdrives, tapes, laser disks) can store the equivalent of thousands of pages of information. Additionally, a suspect may try to conceal criminal evidence; he or she might store it in random order with deceptive file names. This may require searching authorities to examine all the stored data to determine which particular files are evidence or instrumentalities of crime. This sorting process can take weeks, depending on the volume of data stored, and it would be impractical to attempt this kind of data search on site.

    b. Technical requirements. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. Data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional modification of destruction (both from external sources or from destructive code imbedded in the system as a "booby trap"), a controlled environment is essential to its complete and accurate analysis.

    c. Searching computerized information for evidence or instrumentalities of crime commonly requires agents to seize most or all of a computer's input/output peripheral

5

devices, related software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the computer's data in a laboratory or other controlled environment. This is true because of the following;

　　d.　The peripheral devices which allow the users to enter or retrieve data from the storage devices vary widely in their compatibility with other hardware and software. Many systems storage devices require particular input/output devices in order to read the data on the system. It is important that the analyst be able to properly re-configure the computer as it now operates in order to accurately retrieve the evidence.

　　e.　In addition, the analyst needs the relevant system software (operating systems, interfaces and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instruction manuals, or other documentation and data security devices.

26. In light of the concerns outlined above, your affiant hereby requests the Court's permission to seize the computer hardware and associated peripherals that are believed to contain some or all of the evidence described in the warrant and to conduct an offsite search of the hardware for the evidence described, if, upon arriving at the scene, the agents involved in forensic examination of computers conclude that it would be impractical to image or search the computer hardware on-site for this evidence. If such circumstances apply, the government will return the computer equipment within a reasonable amount of time not to exceed 30 days from the date of seizure unless further authorization is obtained from the Court.

V.

CONCLUSION

Based on Affiant's training, experience and knowledge, as well as the other information presented in this Affidavit, I believe there is probable cause that evidence of, fruits of, as well as property designed for use, intended for use, or used in committing violations of Title 18 U.S.C. §1341 (Mail Fraud), 26 U.S.C. § 7201 (Attempt to Evade or Defeat the Assessment of Tax), 26 U.S.C. § 7206(1) (Filing of a False Tax Return) will be found at the premises described in Paragraph 3 above.

Further affiant sayeth not:

s/Brian Eastman

Brian Eastman
Postal Inspector
U.S. Postal Inspection Service

Subscribed and sworn to before me on this 25th day of June, 2018

s/Jonathan E. Hawley

Jonathan E. Hawley
United States Magistrate Judge

7

Attachment A

**Description of Premises**

907 W. Johnson Street, Peoria, IL 61605 is a one story brick building with a red metal fascia. There are signs located within the red metal fascia that read "One Stop Market" and "MacArthur Food Basket." It is a commercial property.



Attachment B

**List of Items to be Seized**

For the period covering January 1, 2015 to June 25, 2018, evidence, instrumentalities and fruits concerning the violation of Title 18 U.S.C. §1341 (Mail Fraud); 26 U.S.C. § 7201 (Attempt to Evade or Defeat the Assessment of Tax), 26 U.S.C. § 7206(1) (Filing of a False Tax Return), including:

1. Any and all computers, network routers, flash drives, and other items of digital media to include electrical, magnetic, and optical digital media, and point of sale case registers.

2. Bank records, credit card account records, investment records, financial institution records and other records reflecting the receipt of income by MacArthur Corner Store Food & More, Inc. and/or Alaa Iwaisi.

3. All documents, records and items related to the business transactions of MacArthur Corner Store Food & More, Inc. and/or Alaa Iwaisi, such as the following: invoices, daily register reports, monthly register reports, credit card sales reports, general ledger(s), cash receipt and/or disbursement journals, and other records reflecting expenses and income.

4. Any and all corporate documentation for MacArthur Corner Store Food & More, Inc. such as the following: Articles of Incorporation, Annual reports, loans by or to the corporation, stock ownership, assets ownership, etc.

5. Personnel and payroll/commission records for all employees of MacArthur Corner Store Food & More, Inc.

6. Any and all records related to the income tax returns filed on behalf of MacArthur Corner Store Food & More, Inc. to include tax return preparation work papers and any supporting documentation.

7. Records of communication with the corporate return preparer to include notes, letters, etc.

8. Documents concerning the occupancy of the location described in Attachment A.

## ADDENDUM TO ATTACHMENT B

This warrant does not authorize the "seizure" of computers and related media within the meaning of Rule 41(c) of the Federal Rules of Criminal Procedure. Rather this warrant authorizes the removal of computers and related media so that they may be searched in a secure environment. The search shall be conducted pursuant to the following protocol:

With respect to the search of any computers or electronic storage devices seized from the business in Attachment A hereto, the search procedure of electronic data contained in any such computer may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

a) Examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth herein;

b) Searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will be not returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

c) Surveying various file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth herein;

d) Opening or reading portions of files in order to determine whether their contents fall within the items to be seized as set forth herein;

e) Scanning storage areas to discover data falling within the list of items to be seized as set forth herein, to possibly recover any such recently deleted data, and to search for and recover deliberately hidden files falling within the list of items to be seized; and/or

f) Performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment B.

The government will return any computers or electronic storage devices seized from the premises described in Attachment B hereto within 30 days of the seizure thereof, unless contraband is found on the seized computer and/or electronic storage device.